State v. Shermer, et al.

STATE OF MISSOURI, Defendant in Error, *vs.* W. SHERMER, AND JAS. SHUMAKER, Plaintiffs in Error.

1. *Larceny—Evidence—Time of going off with property—Declaration then as to his motives and designs.*—On a trial for larceny the prisoner cannot make evidence for himself by adducing his own declarations as to his motives and designs at the time he went away from his home with the property.
2. *Larceny—Arrangements made to return property at time of taking—Evidence as to.*—In larceny for stealing a horse, evidence was held admissible to show that just before taking the horse away, the prisoner had made arrangements with a third person to return the animal to his owner after he had been driven to a certain town. Such evidence was proper to explain the conduct of the prisoner and to show his intention at the time of leaving.
3. *Criminal law—Larceny—Property must be taken animo furandi.*—The taking of property without the *animus furandi* cannot constitute the crime of larceny. Thus, where property was delivered to defendant under contract of sale, part of the purchase money to be paid on time, and the purchaser to retain and use the property meanwhile, and there was no pretense, that at the time of the sale he had a felonious intent, he cannot be held guilty of larceny, from the fact that, after keeping and using the same for several months under the contract, he carried it away without completing the payment.

*Error to Cole Circuit Court.*

*E. L. King & Brother*, for Plaintiffs in Error.

I. If the defendants come into the possession of the horses lawfully (and there is no question on this point), it will not be larceny to afterwards conceive the intent to convert them to their own use. (State vs. Conway, 18 Mo., 321; State vs. Williams, 35 Mo., 229.)

*H. Clay Ewing, Att'y Gen'l*, for Defendant in Error.

I. Intent is the essence of the crime of larceny, but it is not necessary that it should be found at the time of taking the property. It has been held by this court, that, where one comes in possession of property lawfully and afterwards conceives the idea of stealing, he is guilty of larceny. (Morton vs. State, 4 Mo., 46.)

II. There is no law nor common justice in support of the decision of the court in the case of State vs. Conway, 18 Mo., 321, and it is only justified by the circumstances in the case. The court admits the crime and then tries to excuse it.

WAGNER, Judge, delivered the opinion of the court.

The defendants were tried, convicted and sentenced to the penitentiary for the crime of grand larceny. It appears from the record, that one Marshall sold and delivered to the defendants two horses, one wagon and some harness, for which they were to pay him in work, and that they were to be considered the property of Marshall till paid for. The defendants, after they received possession of the property, did work at different times, and paid some of the purchase money, but after having had possession for several months, and, without paying the whole of the price agreed upon, they took the horses and wagon and started for Lebanon, in Laclede County, ostensibly to obtain work on the railroad. They traveled on the plain road, in open daylight, without haste or concealment. Marshall, finding that they were gone, pursued and arrested them, brought them back and had them indicted in Cole County for larceny, At the time they were arrested, they frankly admitted that the property still belonged to Marshall, and said that, on their arrival at Lebanon, they had made arrangements to send it back.

Marshall, who was sworn on behalf of the State, was permitted to give his version of the terms of the contract of sale, and a witness was introduced by the defendants in reference to the same matter. He swore, that he had heard Marshall and the defendants talk about the sale, and then was asked by defendants' counsel, if he had heard Marshall say that he had sold the team to defendants, to state upon what terms he said he had sold the team. Strange as it may seem, the court sustained an objection to this question and ruled it out. For what reason, it is a little difficult to understand. Marshall had been allowed to testify freely and fully what he considered to be the contract, but, when the defendants attempted to show what were the terms agreed upon, in the only manner in which it was permissible for them to show that fact, they were stopped by the court, and the testimony was excluded. This was manifestly erroneous.

The defendants offered in evidence declarations by them, as

explanatory of their motives and designs, when they were about to leave home. But this the court excluded. The evidence was clearly inadmissible. The defendants could not make evidence for themselves by adducing their own declarations. But they went further and offered to show that they had made arrangements with a third party to bring the team back after they had driven it to Lebanon, and this offer was refused. I think they should have been permitted to introduce the testimony. The evidence did not simply go to their words, but to their acts also, and was competent to explain their conduct, and show their intention at the time of their departure.

Numerous instructions were given and refused, and many of them had no bearing whatever upon any issue involved in the case. It is only necessary to notice one given for the State, and one refused for the defense, to show the theory upon which the court tried the case. For the State, the court gave the following instruction : "The jury are instructed, that, if they believe from the evidence, that the said horses, wagon and harness were, by the contract of sale, not to be the property of the defendants until they were paid for, then the jury are instructed, that, until they were so paid for, they continued to be the property of the said Marshall, and, if the jury further believe from the evidence that the defendants did, without the permission of the said Marshall, take the property away into another part of the State, and that they did so with the intent to avoid their said contract with the said Marshall, and to convert the said property to their own use, and thereby to cheat and defraud, by their acts, the said Marshall out of his said property or any interest which he may have had in the said property, on account of anything remaining unpaid on account of the purchase money by the said defendants, then the jury should find the defendants guilty, and assess their punishment as before stated." The following instruction, asked by the defendants, was refused : "If the jury believe from the evidence, that the defendants took and used the horses, &c., for the purpose of making a trip to Lebanon, and, of their either

State v. Shermer, et al.

returning with the team, or of returning the team by another person, then the jury will find the defendants not guilty."

It is an established principle of law, that larceny may be committed of goods obtained from the owner by delivery, if it be done *animo furandi.* · The authorities referred to in State vs. Williams (35 Mo., 229) abundantly illustrate this. Thus, in Pear's case (2 East P. C., 685) it was held, that hiring a horse on pretense of taking a journey, but, in truth, with the intent to steal it, and evidencing such felonious intent by selling the horse, was larceny.

In Spencer's case (Lew. C. C., 197) the prisoner went to the house of the prosecutor and asked him if he let horses out to hire, and if he could have one to go to Stockport, a distance of about seven miles. The prosecutor let him have a mare, and the prisoner mounted her, and rode away, but in a different direction from Stockport, and the next day offered the mare for sale, alleging that she belonged to him. Bayley, Judge, charged the jury, that, if a person gets possession of a horse by hiring, meaning at the time not to use it for the purpose for which he states he hired it, but to endeavor to make it his own, he is guilty of stealing. " In these cases," he said, " the guilt or innocence of the party depends upon what passed in his mind at the time, and this is to be inferred from circumstances; if you find, that, instead of going to the place where he said he was going, he went elsewhere, it raises a presumption that he meant to deprive the original possessor of his horse." But the rule is, I believe, universal, that to constitute larceny the intention to steal must have been formed at the time of the taking.

Witt vs. The State (9 Mo., 663), is a case much stronger than the one at bar for the prosecutor. There the court had instructed the jury, that, if they believed from the evidence that the horse belonged to Smith, and that the prisoner took and carried away the horse, without the knowledge and consent of Smith, with the intention of selling him or of converting him to his own use, they ought to find him guilty. And, although the jury might believe from the evidence, that

Smith, in the contract spoken of, had agreed that the prisoner might ride the horse, yet, if they believed the prisoner took the horse with the intention of selling him, or of converting him to his own use, they ought to find him guilty. The instruction was held to be erroneous, and it was declared that the facts assumed constituted merely a trespass and not larceny. Scott, Judge, speaking for the whole court, said, that there could not be a larceny without a felonious intent; that the taking of the personal goods of another without this intent might be a trespass, but it could not amount to larceny.

The prisoner might have done every act supposed by the instruction without being guilty of a felony. So, in the case of the State vs. Conway (18 Mo., 321), it was held, that there could not be a larceny without a felonious intent at the time of taking; that the taking might be a trespass, but it could not amount to a larceny. The case, as made out by the State, shows conclusively that the property was delivered to the defendants under a contract of sale, and that they were in the possession of it for several months, holding and using it under the contract. As it is not anywhere pretended that they had any other than an honest intent at the time they contracted for the property and received possession of it, it is utterly impossible to impute to them the crime of larceny. The court erred, and its judgment should be reversed, and the cause remanded.

The other judges concur.