THE STATE v. F. W. POTTS, Appellant.

Division Two, February 6, 1912.

1. JUROR: Used as Witness. The mere fact that the prosecuting attorney was permitted to indorse the name of one of the jurors on the information as a witness, with no showing of any prejudice resulting therefrom, is not error.

2. EVIDENCE: Conversations With Co-conspirator. Testimony of a witness that he frequently saw the defendant and another co-indictee, to whom a severance had been granted, talking together in the gambling room which was in charge of said co-indictee, is competent in the separate trial of defendant on the charge of setting up a gaming table and gambling device, commonly known as a "crap table." There being substantial evidence of the conspiracy and common intent between the two, testimony of the acts and declarations of said co-indictee was competent against defendant.

3. ————: Cross-examination of Witness: Interest in Trial: Immunity from Prosecution. The defendant should be permitted to show, by cross-examination or otherwise, that a witness for the State had an arrangement with the prosecuting attorney's office whereby a prosecution against him of a similar offense was to be dismissed in consideration of his turning

State's evidence against the defendant, whether such arrangement was made by the witness himself or some other person for him and whether it was an agreement or a mere understanding, belief or assurance.  But in this case the right to cross-examine the witness on the point was not denied, since the witness had several times denied that any such arrangement had been made.

4. ———: **Cross-examination of Witness: Extent: Guilt of Another Crime.**  A witness may be compelled to answer any question on cross-examination, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to him, except where the answer might expose him to a criminal charge; but it is largely within the discretion of the trial judge to determine to what extent such cross-examination will be permitted.  The refusal of the court to permit the defendant, charged with setting up a gambling device, to show, upon cross-examination, that the witness had taken a woman to New Mexico for the purpose of running a bawdy house, was not, therefore, reversible error, since the keeping of a bawdy house is a criminal offense, and the court's ruling can well be sustained on that ground, under the rule.

5. ———: **Setting up Gambling Devices.**  Testimony as to the kind of dice used in the game, that a tag containing defendant's name was found on one of the tables used, and that the poker table covers had the defendant's name stamped thereon, all found in the gambling room in which defendant is charged with setting up and keeping a gaming table and gambling device, commonly known as a crap table, tended to prove the *corpus delicti* of the offense charged and defendant's connection therewith, and was competent evidence for the consideration of the jury.

6. ———: **Testimony on Former Trial: Impeachment.**  It is not error to refuse to permit defendant to read in evidence, for the purpose of impeachment, the testimony of a witness given at the trial of a co-indictee, where no foundation for the impeachment has been laid.

7. **INSTRUCTION: Accomplice.**  An instruction telling the jury that "the witness A. O. Walker is known in law as an accomplice; that is, that said witness, Walker, is a party who admits he participated in the commission of the offense with which the defendant is charged in the information," is open to criticism, since it almost assumes the defendant's guilt.

8. **REMARKS OF COUNSEL: Defendant's Failure to Testify.**  In the cross-examination of defendant, the prosecuting attorney asked him what was his business in December, 1909, and to the question defendant's counsel objected on the ground that it

State v. Potts.

related to a matter not referred to in defendant's examination in chief, and that objection was sustained. In their argument to the jury both attorneys for the State referred to the fact that the defendant objected to such question, and urged the jury to draw an inference of guilt from the fact that the question was not answered; and when defendant's counsel objected to such argument, he was met with the answer from the court that the objection to the question and the court's ruling thereon were facts in the case and therefore proper matter for comment and argument to the jury. *Held*, prejudicial error, and in violation of the statute which says that the defendant's failure to testify to certain facts shall not raise any presumption of guilt, "nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." And, aside from the statute, it was error, because it was not evidence in the case, and the instruction should tell the jury that "before you can convict the defendant you must be satisfied of his guilt, beyond a reasonable doubt, from the evidence in the case."

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED.

*Clay & Davis* and *Burton* for appellant.

(1) The court committed error in permitting the prosecuting attorney to indorse the name of the juror Miller upon the information, and then excusing him from the panel of jurors. (2) It was error to permit the witness Walker to testify to having seen defendant and Cannon talking together frequently. (3) The court committed error in refusing defendant permission to show by the witness Walker, on cross-examination, that he had an arrangement or agreement made by his attorney with the prosecuting attorney's office, whereby his case was to be dismissed in consideration of his turning State's evidence against defendant. 3 Wigmore on Evidence, sec. 2196; 4 Wigmore on Evidence, sec. 2321; Weinstein v. Reid, 25 Mo. App. 47; Fry v. Estes, 52 Mo. App. 45; Ehrhardt v. Stevenson, 128 Mo. App. 476. (4) The court com-

mitted error in permitting the witness Walker to testify as to what Cannon did in and about the devices in question, and also what he did in and about the room in which they were located. (6) The court committed error in refusing defendant permission to cross-examine the witness Walker about his being a fugitive from justice. O'Connor v. Transit Co., 106 Mo. App. 220. (7) The court committed error in refusing defendant permission to cross-examine and show by the witness Walker that he took a woman to Raton, New Mexico, for the purpose of running a bawdy house, and that he was supported by said woman from her earnings as a bawd. O'Connor v. Transit Co., 106 Mo. App. 220; State v. Boyd, 178 Mo. 17. (8) The court committed error in permitting the State to show by the witness Walker that Charles Cannon knew, at the time the witness Walker was employed in the gambling house over the Club saloon, about the witness having made loaded dice, and to testify as to the purpose and object of making said dice, and to testify that, on the evening of his arrest, shaped dice were furnished him by the keeper of the house and that said dice were in use, and to testify as to the kind and character of the dice. (9) The court committed error in refusing defendant permission to read in evidence, for the purpose of impeaching the witness Walker, his testimony given on the trial of Charles Cannon. Ess v. Griffith, 128 Mo. 63. (10) The cause should be reversed and remanded on account of the remarks of the prosecuting attorney and his assistant made during the argument of the case. State v. Snyder, 182 Mo. 523; State v. Newcomb, 220 Mo. 67; State v. James and Johnson, 216 Mo. 401. Instruction 14 does not properly declare the law. This instruction tells the jury, in so many words, that the witness Walker was an accomplice of defendant. If he was an accomplice of defendant, that was a fact to be found by the jury (and not the court) from the evidence in the case.

*Elliott W. Major,* Attorney-General and *John M. Dawson,* Assistant Attorney-General, for the State.

(1)     Appellant in his brief makes the point that the court committed error in refusing appellant permission to show by the witness Walker, on cross-examination, that he had an arrangement, or agreement, made by his attorney, with the prosecuting attorney's office whereby the witness Walker's case, was to be dismissed in consideration of his turning State's evidence against appellant. The court permitted the appellant to interrogate this witness upon any communication had between the witness and the prosecuting attorney, or any of his assistants, but refused to permit the attorney for appellant to cross-examine the witness as to any communication had between the witness and his attorney. That the communication between client and attorney is privileged, cannot be gainsaid. Ehrhardt v. Stevenson, 128 Mo. App. 476; Elliott v. Kansas City, 198 Mo. 593. (2)    Instruction 14, complained of by appellant, is a cautionary instruction, and the fact that the court told the jury that Walker is known in law as an accomplice, is a more favorable declaration of law than appellant was entitled to. The instruction then proceeds to inform the jury that the matters connecting appellant with the commission of the crime as charged against him, should be received with great caution. The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. 1 Greenleaf on Evidence, sec. 380. (3) The argument of counsel in this case was proper. In one instance the assistant prosecuting attorney remarked that "it is not much trouble to convict these fellows." The court excluded this from the jury and told them not to take same into consideration. This was a rebuke to the assistant prosecuting attorney, and was all the court could do. An attorney has some latitude in drawing his conclusions. The trial court heard the

argument and is better qualified to hear and determine the bounds of argument. The trial court can only review and withdraw the remarks from the jury. It is impossible for the court, or any other man, to prejudge what an attorney is going to say. In this case, what the attorney did say, if the court had not withdrawn same from the jury, was not error. Appellate courts should be slow in reversing a case on account of improper argument of counsel. To constitute a reversible ground, the argument should be so poisoned and the appellate court should believe that the argument alone was conducive to the verdict of guilty, and without it the verdict would have been an acquittal, before this court should convict the lower court for not performing its duty in this behalf.

KENNISH, J.—At the June term, 1910, of the circuit court of Jasper county, appellant was convicted of the offense of setting up and keeping a gaming table and gambling device, commonly known as a crap table, was sentenced to imprisonment in the penitentiary for a term of three years, and appealed to this court.

The information was in two counts. The first count charged F. W. Potts, Charles Cannon and W. L. Smith with setting up and keeping a poker table, and the second count charged them with setting up and keeping a crap table. The defendant Potts was tried separately. The evidence for the State tended to show the following facts:

In the month of December, 1909, gambling games were carried on in a room over the Southern Club saloon in Webb City. The room was fitted up with gambling paraphernalia, consisting of poker tables, chips, cards, crap tables and dice. On the night of December 11th, the room was raided by the sheriff and the gambling paraphernalia was taken out of the room. At the time of the raid a large number of men

were in the room, engaged in playing poker and craps for money. Charles Cannon was in the room. O. A. Walker, who testified as a witness for the State, was in charge of one of the crap tables. The defendant was in the saloon below.

There was evidence to the following effect, tending to connect the defendant with the setting up and keeping of the gaming tables and gambling devices:. Cannon, who was generally in the room when the games were in progress, sometimes acting as dealer at one of the tables, and who usually furnished the dealers at the different tables with money to run the games, hired the witness Walker to run one of the crap tables and otherwise assist in running the games. On one occasion a dealer at one of the crap tables asked Walker to go to the saloon below and ask defendant to come upstairs. When the defendant arrived the dealer informed him he was about out of money, whereupon the defendant supplied him with money to use in the game. The games played on the crap tables were what are known as "bank games," that is, the players did not bet against each other, but against the "house." Defendant at another time carried money from the dealers at the tables to the saloon below and placed it in a safe behind the bar. On the day the raid was made, but earlier in the evening, defendant had acted as dealer at one of the tables. When the games were in progress the defendant was usually in the gambling room or in the saloon below, and in both places had frequent conversations with Cannon. When the defendant was in the gambling room, and Cannon was absent, the dealers at the tables went to defendant for information. On one of the crap tables found in the room there was a shipping tag, showing that the table had been shipped from Parsons, Kansas, to Pittsburg, Kansas, by F. Potts. Defendant had formerly lived in Parsons. The name "Potts" was also stamped on the covers of the poker tables.

At the close of the State's evidence, the prosecuting attorney elected to stand upon the second count, which related to the crap table.

The defendant, as a witness in his own behalf, denied that he had ever furnished any money to use in any of the games, denied that he was ever in the gambling room or ever put any money in the safe in the saloon, and denied that he had any interest in the gambling room or in the games operated there.

One of the owners of the Southern Club saloon testified that only he and his partner had access to the safe, and that defendant had never placed any money therein.

In the cross-examination of the defendant, the prosecuting attorney asked him what his business was in December, 1909. The question was objected to by the defendant on the ground that it was a matter not referred to in the examination in chief, and the court sustained the objection. During the prosecuting attorney's closing argument to the jury, he made the following remarks:

"What are the material facts sworn to by the witness Walker that tend to convict Potts? They are these: That Potts went behind the bar; that he went to the safe; that he placed the money there. And Potts takes the stand and denies that, and when asked, 'What is your business'—I want to leave it to you twelve men if that isn't a fair question to ask any citizen in Jasper county, here, now or any time—'what is your business,' and I want to say—."

Defendant objected to the remarks of the prosecuting attorney, on the ground that the court had sustained an objection to the question. The court overruled the objection and directed the prosecuting attorney to proceed.

During the course of the remainder of the argument of the prosecuting attorney, the following transpired:

"Mr. Coon: Now, gentlemen, when you retire to your jury room, take into consideration the character of the offense this man is charged with. He is charged with setting up this gambling paraphernalia, and arranging it for men to go up there and go against a brace game. Not even giving them a percentage of ordinary craps, but they have cut them down and increased the percentage of the house. This is the kind of business this defendant was engaged in, and do you wonder why, gentlemen, when I asked this defendant here on the witness stand, 'During the month of December, prior to December 11, 1909, what business were you engaged in?' the counsel for the defendant, first the little one and then the big one: 'We object;' and they are objecting now."

"Mr. Clay: Can't we make an objection? We object to that.

"The Court: Objection overruled to that.

"Mr. Clay: We except, and we object to his referring to matters excluded by the court.

" The Court: That is a fact in this case he is referring to."

And to this ruling defendant again excepted.

I.  Appellant first complains that the court erred in permitting the prosecuting attorney to indorse the name of one of the jurors on the information as a witness, and then excusing said juror from the panel. As no suggestion of prejudice resulting from such ruling is made or can be perceived, further consideration need not be given to this complaint.

II.  It is assigned as error that the court permitted the witness Walker to testify that he frequently saw the defendant and Cannon talking together in the gambling room. It appeared in evidence that the defendant and Cannon were jointly charged with the crime for which the defendant was then on trial, and

although a severance had been granted, it was nevertheless competent for the State to prove a conspiracy or common purpose between the two in the commission of the offense charged, in order to render admissible in evidence against the defendant the acts and declarations of Cannon. [State v. Fields, 234 Mo. l. c. 623; State v. Roberts, 201 Mo. 702; State v. Darling, 199 Mo. 168; State v. Sykes, 191 Mo. 62.]

There was ample testimony to support the theory of the State as to the conspiracy and common intent between the defendant and Cannon, and we therefore rule against the appellant as to all of the alleged errors based upon his objections to the acts and declarations of Cannon, as incompetent testimony against the defendant.

III.   A. O. Walker was the chief witness for the State, and it was shown by the testimony that a prosecution for the same offense was then pending against this witness.   Appellant complains that the court refused him permission to show by the cross-examination of Walker that he had an arrangement, made by his attorney with the prosecuting attorney's office, whereby his case was to be dismissed, in consideration of his turning State's evidence against the defendant.

There is no doubt of the right of a defendant on trial to cross-examine a witness against him as to any matter that would discredit the witness, and to that end to show the interest of the witness in the result of the trial.   In no way could that have been done more effectively in this case than by showing that an arrangement existed by which the witness was to escape prosecution for a felony upon condition that he gave testimony to convict the defendant.   It was not of importance who made such an arrangement with the prosecuting attorney's office, whether the witness himself, his attorney, his wife or another, but rather

whether the witness, when testifying, had any understanding, belief or assurance that by so testifying he was to secure immunity for himself. We have examined the record upon this point and find that while the court sustained some objections upon the cross-examination of this witness which might well have been overruled, the witness had in fact been asked several times and had expressly denied that any promise had been made to him by any person, and stated that his testimony against himself and the defendant was entirely voluntary. We therefore rule against appellant upon this complaint.

IV. It is assigned as error that the court refused defendant permission to show, upon the cross-examination of the witness Walker, that the witness had taken a woman to New Mexico for the purpose of running a bawdy house.

The rule in this State, as to the scope allowed in the cross-examination of a witness, is that " 'he may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except' where the answer might expose him to a criminal charge." [State v. Long, 201 Mo. l. c. 675, and cases cited.] There is this limitation to the rule, that while such questions may be asked, it is largely within the discretion of the trial court as to the extent to which such cross-examination will be permitted. And in the case in hand it cannot be said that there was an abuse of discretion by the trial court in sustaining the objection. [State v. Long, supra.] Besides, as the keeping of a bawdy house is a criminal offense, the witness had the right to refuse to answer the question, and the ruling of the court can well be sustained upon that ground, under the rule above stated.

V. Other complaints are made by the appellant as to the admission of evidence over his objections,

which we have examined and found to be without merit. The kind of dice used in the game, that a tag containing the defendant's name was found on one of the tables, that the poker table covers had the defendant's name stamped thereon, these facts and circumstances tended to prove the *corpus delicti* of the offense charged and the defendant's connection therewith, and were properly admitted in evidence for the consideration of the jury.

Neither is there any merit in appellant's complaint that the court sustained an objection to defendant's offer to read in evidence, for the purpose of impeachment, all of the testimony given by the witness Walker on the trial of Charles Cannon. There is no authority, under the laws of this State, for the impeachment of a witness in that manner. Testimony of a witness on a former trial may be introduced in evidence for the purpose of impeachment when a proper foundation therefor has been laid, but as that was not done in this case the court correctly excluded such testimony.

VI. A serious question is presented in the assignment of error to the giving of instruction number 14 on behalf of the State. This instruction is as follows:

"The court instructs the jury that the witness, A. O. Walker, is known in law as an accomplice; that is, that said witness, Walker, is a party who admits he participated in the commission of the offense or offenses with which the defendant is charged in the information. The court instructs you that the testimony of an accomplice in a crime is admissible. Yet, evidence of an accomplice in a crime, when not corroborated by some person or persons not implicated in the crime, as to matters material to the issue, that is, matters connecting the defendant with the commission of the crime as charged against him, should be received

with great caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

Appellant complains of this instruction that the court, in telling the jury that the witness Walker was an accomplice, necessarily assumed the defendant's guilt, for the witness could not be an accomplice in the crime unless the defendant was also guilty.

There are many precedents of approved instructions, upon the subject of the testimony of an accomplice, in the decisions of this court, but we have failed to find therein authority for the law as stated in the first part of this instruction. And although the instruction, when considered in connection with the other instructions, may not amount to reversible error, it is clearly open to criticism.

VII.    The judgment must be reversed and the cause remanded because of the improper conduct of the counsel for the State in the closing argument to the jury.

It is plainly provided by section 5242, Revised Statutes 1909, that a person on trial in a criminal case may testify in his own behalf, and shall be liable to cross-examination only as to matters referred to in his examination in chief. The next succeeding section as construed by this court, provides that his failure to testify, or, if he does take the stand, his failure to testify to certain facts, shall not raise any presumption of guilt, "nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

As appears in the statement of facts heretofore made, the court properly sustained an objection to a question asked the defendant on cross-examination as to what business he was engaged in. In the argument of the case, both representatives of the State referred to the fact that the defendant objected to such

question. The jury was urged to draw an inference of guilt from the fact that the question was not answered, and when counsel for defendant objected to such argument he was met with the answer from the court that the objection to the question and the court's ruling thereon were facts in the case and therefore proper matter for comment and argument to the jury. That this was prejudicial error is apparent. It would have been error even if the witness had not been the defendant, for the court had correctly instructed the jury that: "Before you can convict the defendant you must be satisfied of his guilt, *from the evidence in the case,* beyond a reasonable doubt," etc. And evidence attempted to be introduced, but excluded, is not in any sense *evidence in the case.* But as the witness was the defendant on trial, the inference sought to be drawn from the unanswered question was so plainly violative of the defendant's rights that the court should have promptly checked counsel and administered such a rebuke as not only would have prevented a recurrence of such unfair argument but, as far as was within the power of the court, corrected its harmful effect. While there was abundant evidence of defendant's guilt, he was nevertheless entitled to a fair and legal trial. Whatever may be our opinion of the wisdom of the law he invokes, it is the law and should be observed until repealed. The State cannot countenance the violation of one law in order to secure a conviction for the violation of another.

For the reasons given the judgment is reversed and the cause remanded. *Ferriss, P. J.,* and *Brown, J.,* concur.