**STATE of Missouri, Respondent,**

v.

**Lillie Mae BROOKS, Appellant.**

No. 49327.

Supreme Court of Missouri,

Division No. 1.

Oct. 8, 1962.

Thomas J. Allen, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Allen J. Roth, Special Asst. Atty. Gen., Jefferson City, for respondent.

COIL, Commissioner.

Lillie Mae Brooks was convicted of second degree murder and her punishment fixed at twelve years in the state penitentiary. Inasmuch as she has filed no brief on her appeal from the ensuing judgment, we examine the assignments of error in her motion for new trial.

Assignment 11 was that the trial court erred in failing to sustain her motion for judgment of acquittal at the close of the state's case. Defendant waived that motion by offering evidence in her defense. She does not contend that there was no submissible case at the close of all the evidence.

The evidence tended to show that on July 18, 1961, about 6:45 p. m., defendant and her then husband, Milton Brooks, were walking west on the north side of Lucas Avenue in St. Louis toward their residence. Their automobile was parked facing west at the north curb of Lucas in front of their house. When they had reached a place on the sidewalk approximately even with the rear of the car, Milton went to the rear of the automobile and bent over as though he intended to open the trunk; whereupon defendant walked to a place behind her husband, reached under her blouse and withdrew a knife which she had theretofore concealed with which she stabbed her husband in the back. Milton died shortly thereafter from the wound thereby inflicted. A friend of deceased removed the knife from and assisted Milton to a prone position. The knife dropped to the street after it was pulled from deceased's back and was near deceased's body. Exhibit 3 was identified as a photograph showing the automobile and the knife in the street after deceased's body had been removed. Defendant, arrested about 7:15 p. m., about a block from her residence, was taken to a police station where she told an officer that she and her husband had been arguing about a woman who lived next door; that when they returned to the residence on the occasion in question, the husband went to the back of the car to get some shoes from the trunk; that she, in the meantime, went into the house, got a knife, concealed it in her blouse, and went up to her husband; that he cursed at her and grabbed her arm and then turned

around as if to open the trunk and she stabbed him. There was testimony that at the time of her statement defendant's eyes were black and that she had bruises on her arms, which she told the officer had been inflicted by her husband. Defendant's written statement was to the effect that after she had obtained the knife and had hidden it under her blouse, her husband was at the car and locking the trunk when she approached him, that he pushed her back and had a wrench or something in his hand, and, after he turned around, she stuck him in the back. At the trial, defendant testified to numerous assaults and other acts of mistreatment by deceased and said that on the day in question they had been to a picnic and upon their return defendant had mistreated her; that later she found him talking to the "other woman" and that she and deceased then started walking up Lucas Street arguing; that deceased had tried to push her into a doorway and that he had an open knife in his hand and swung at her with the knife and scratched her arm; that she was in fear of her life, and she doesn't remember whether she stabbed him or just when she did, if so, but that it must have been after he hit her. Further testimony will be related as necessary to the disposition of specific assignments.

■ Defendant's new trial assignment 1 is that the trial court erred in permitting testimony concerning and in allowing the jury to see state's exhibit 3 when it was held by a witness on the stand. The exhibit was a picture showing the knife in the street at the rear of an automobile. The reason assigned in the new trial motion is that there was no showing as to who placed the knife in the position shown in the exhibit. The record shows that exhibit 3 was never offered or admitted in evidence and that defendant made no objection to the exhibit or to any testimony concerning it. Consequently, there is nothing concerning the exhibit preserved for our review. State v. Bland, Mo., 353 S.W.2d 584, 586 [3–5]. We observe, however, that, as indicated in the fact statement above, there was testimony that the knife fell to the position apparently shown on exhibit 3 immediately after being pulled from the back of deceased.

■ Assignment 2 charges the trial court with error in making a statement to a member of the jury panel at the time the judge excused the prospective juror by reason of the answer he (the juror) had made to a question. The record shows that defendant's attorney asked the panel whether any member had been the victim of a crime. One answered that he had been held up and that such would tend to prejudice him for or against one of the parties. The court asked whether the juror felt his experience would interfere with his judgment even though the case on trial involved a crime of a different type. The panel member then indicated that he probably would not be influenced by his experience; but the court pointed out that the prospective juror had stated theretofore that he would favor the state and, therefore, he was going to excuse him, adding that he, the trial judge, wished to point out how unreasonable it was for the panel member to let his personal experience in a holdup influence him in a case which involved no such aspect. Thereupon, the panel member was excused. Defendant in his motion for new trial contends that the court's remarks effectively prevented any prospective juror from thereafter stating his true feelings on the question of prejudice even though another panel member might have been the victim of a crime. Aside from the fact that the record does not show that any other panel member answered that he had been the victim of a crime, there was no objection to the court's statement at the time and thus nothing has been preserved for our review. State v. Curtis, 324 Mo. 58, 23 S.W.2d 122, 125 [9]; State v. Keller, Mo., 344 S.W.2d 65, 67.

■■ Assignments 3 and 4 charged the court with error in refusing to permit Ethel Sanders, a state's witness, to disclose on cross-examination, as defendant's offer of proof indicated she would, that she had,

a month prior to her testimony and some 4½ months after the occurrence of the incident on trial, stabbed or cut her brother's arm. The reasons stated in support are: because her brother was a witness endorsed by the state and the jury was entitled to decide whether Ethel Sanders had stabbed her brother to prevent him from testifying; and because such testimony would show that Ethel Sanders "was herself guilty of a crime and this would reflect on her character and veracity." The record shows that Ethel Sanders testified that she lived in the same house as the Brookses and was sitting on the front step when she saw defendant stab her husband in the back as he faced the trunk of his automobile. On cross-examination, defendant's counsel elicited the fact that her brother went to the hospital because of a cut arm two days prior to the present trial. The question, how her brother received the cut on his arm, was objected to on the ground that it was immaterial. The trial court, after establishing that the arm injury had occurred about a month ago, sustained the objection and a like objection to the question as to who had stabbed the witness's brother. Out of the jury's hearing defendant's counsel offered to prove that the witness had stabbed her brother "and this was all tied in together." The court sustained the objection to the offer, pointed out that no conviction of the witness had been shown, and invited counsel to pursue the matter at a later time, which counsel failed to do. At the trial, defendant's counsel did not disclose directly to the court, and certainly there was no indication from the question asked or the offer of proof made, that he intended to show that the witness, Ethel Sanders, had stabbed her brother to make him unavailable as a witness at the present trial. As to defendant's further contention that Ethel's answer would have impeached her credibility by showing that she was guilty of a crime, we observe that defendant offered no record of the witness's conviction and made no offer to prove otherwise that the witness had committed a crime, and, under those circumstances, the witness could not be compelled to answer a question which might expose her to a criminal charge, even though the answer might have affected her credibility as a witness. The statement of the court in State v. Potts, 239 Mo. 403, 144 S.W. 495, 498, is apropos: "The rule in this state, as to the scope allowed in the cross-examination of a witness, is that 'he may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except when the answer might expose him to a criminal charge.' State v. Long, 201 Mo. [664], loc. cit. 675, 100 S.W. [587] 590, and cases cited. There is this limitation to the rule that, while such questions may be asked, it is largely within the discretion of the trial court as to the extent to which such cross-examination will be permitted."

Defendant's assignment 5 charges that the trial court erred in permitting a witness who had not been endorsed upon the information to identify a hospital record. There is no merit in that contention. There was no necessity to have endorsed a witness who appeared only for the purpose of identifying a public or hospital record. State v. Malone, Mo., 301 S.W.2d 750, 756 [11, 12].

Assignments 6 and 7 charged the trial court with error in refusing to permit a medical doctor to answer a hypothetical question as to the mental condition of Milton Brooks thus depriving the jury of the doctor's opinion as proffered in an offer of proof to the effect that deceased "was a paranoid and an individual that would be dangerous and likely to inflict harm upon the defendant, * * *." Defendant, by cross-examination of state's witnesses as well as by examination of her witnesses and by her own testimony, offered proof of prior acts of physical violence committed by deceased upon defendant, his then wife, proof of fights between them on several prior occasions, proof that her husband subjected her to unnatural sexual relations,

and proof that deceased slapped and kicked defendant when they returned from a picnic on the afternoon of the day defendant killed her husband. Defendant's counsel asked the doctor this question: " * * * please assume that a man forty-two years of age previously treated his wife well, and that he then commenced to attack her and to beat her badly on several occasions and that he blackened her eyes, and that he then forced her to undergo unusual sexual activities which he had previously not done, and that he had beat her a month prior to his decease. Doctor, would you have an opinion as to this man's mental condition?" After an objection was sustained, an offer of proof was made that the witness, if permitted, would state his opinion that Milton Brooks was "psychotic and likely to do harm to the defendant." The trial court sustained an objection for the stated reason that the question as put was wholly insufficient. We are of the view that the trial court correctly ruled. In addition to the fact that the pertinent part of the proffered answer would not have been responsive to the question as asked, the question did not contain details which would seem to be necessary to form the basis for a relevant, probatively valuable opinion. The question did not indicate the length of time during which deceased had treated his wife well; the time when the attacks began or the frequency of them; nor did the question negative any justification or provocation for such attacks; the question did not indicate the type of sexual activity described in the question by the conclusory statement "unusual"; and the question did not limit the inquiry as to deceased's mental condition to any particular or relevant time. The question as framed was so general and so inadequately described and related the facts in evidence that any opinion based thereon would have been at best of insignificant or no probative value, and probably irrelevant. Defendant's counsel did not attempt to reform and restate a hypothetical question after the trial court had ruled as above stated. Under the circumstances, we hold that the trial court did not err in its rulings.

■■ Assignments 8 and 9 are that the court erred in refusing to permit defendant's witness Williams to testify, as an offer of proof indicated he would, that in May of 1961, some two months prior to the day deceased was killed, defendant visited him in his capacity as a lawyer; that she told him that the bruises and contusions on her face, the bruises on her leg, and the fact that her eyes were partly closed, were due to injuries inflicted upon her by her husband. The trial court did not err because the proffered testimony was defendant's self-serving declaration independent of the res gestae of the crime. "A defendant is not permitted to create evidence by adducing testimony of his own self-serving act or declaration which is independent of the res gestae of the crime. State v. Tripp, Mo.Sup., 303 S.W.2d 627; State v. Perkins, Mo.Sup., 92 S.W.2d 634; State v. Golden, 330 Mo. 784, 51 S.W.2d 91; State v. Blitz, 171 Mo. 530, 71 S.W. 1027; State v. Shermer, 55 Mo. 83; Underhill's Criminal Evidence, 4th Ed., § 255, pp. 480–483." State v. Brown, Mo., 312 S.W.2d 818, 822.

■ Assignments 10, 14, and 15 have to do with the following argument by the state's attorney: " * * * then he wants you to believe here, that because of the fact that this woman said that she was beaten on many occasions, that she was afraid, that she was afraid for her life when she did this to this man. Now, I ask you this, if she was so darned afraid, why did she go up that alley after him, and why did she take that knife with her? That is the whole answer to the whole story, if she was so doggoned afraid, why didn't she stay in the house where she was, why didn't she stay in her own home and call for help, call the police, or go some place else, why take a knife and stick it into her bosom and go looking for a man if she was afraid. That is the answer to this whole question of self-defense. Now, any jury that would be foolish enough, and I mean that literally,

that any jury that would be foolish enough to believe that this woman killed that man in self-defense, should be ashamed to look at themselves." Whereupon the following occurred: "MR. SURINSKY: Just a minute, I am going to object to that, trying to prejudice the jury. THE COURT: Well, it is an unusually strongly worded statement, and I think probably it ought to be eliminated although I am not—that expressed no view about the accuracy or not. We will disregard that statement. MR. CAHILL: Yes, your Honor, I think that it is perhaps too strong, perhaps I got carried away from my own emotion over the thing, but I think that all of you gentlemen, using plain common sense should realize that if this is a case of self-defense, then nobody could ever be convicted at any time of anything. That is just how foolish self-defense is in this case * * *." Defendant contends in her motion for new trial: that the statement as to how foolish the jury would be to believe defendant's self-defense evidence, constituted an expression of the personal opinion of the assistant circuit attorney as to defendant's guilt and thus prevented a fair verdict from the jury; that the court erred in its comment concerning that statement for the reason that it was an expression of opinion by the court which would tend to inflame and prejudice the jury; and that the court's remarks indicated that the court agreed with the state's attorney's characterization of the self-defense plea and thus constituted "an opinion of the Court" and invaded the province of the jury. As shown by the excerpt of the record reproduced above, defendant's counsel was apparently satisfied with the statement of and the action by the court at the time because no objection was made to the court's statement and there was no request for any further action. Under the circumstances, defendant is in no position to now complain. State v. Armstead, Mo., 283 S.W.2d 577, 582 [13].

Assignment 12 that the verdict was against the weight of the evidence is too general to have preserved anything for appellate review.

Assignment 13 is that the verdict constituted "cruel and unusual punishment and as such is against the Constitution of the State of Missouri and the Constitution of the United States." That assignment is too general to have preserved anything for appellate review. State v. Pruett, Mo., 342 S.W.2d 943, 945. We observe that the punishment assessed by the jury was within the limits prescribed by Section 559.030 RSMo 1959 and V.A.M.S., and, consequently, may not be adjudged excessive or cruel and unusual without some showing not made in this case and not apparent on this record. State v. Mayabb, Mo., 316 S.W.2d 609, 610 [1, 2].

Assignments 16, 17, and 18 complain that the trial court erred in giving instruction 4, a manslaughter instruction, for the reasons that it failed to define passion or provocation, it failed to instruct that a battery by deceased at the time of the homicide was sufficient to reduce the charge to manslaughter, and that it was abstract. None of those objections are well taken. It perhaps should be observed preliminarily that defendant was not convicted of manslaughter under instruction 4 but was convicted of murder in the second degree under instruction 3 of which no complaint is made. If, however, there were errors in the instruction on the lesser offense of manslaughter, possibly there could be ground for complaint on the theory that an erroneous manslaughter instruction prevented the jury from convicting of that lesser crime rather than of murder in the second degree. See State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 321 [12]. In any event, the manslaughter instruction in this case was in a form which has been generally approved heretofore. It directed that if the jury found defendant not guilty of murder in the second degree then to consider whether he was guilty of manslaughter. It defined manslaughter as the killing of a human being not herein declared to be murder in the second degree or excusable or justifiable homicide. It then hypothesized that if the jury found beyond a reasonable doubt that

defendant feloniously and intentionally, without malice and without premeditation, mortally wounded Milton Brooks by stabbing him, and that such act, if committed by defendant, was not justifiable or excusable homicide and not in lawful defense of her person as set forth in another instruction, it would find the defendant guilty of manslaughter; and that unless it did so find, it would acquit the defendant. The instruction then defined excusable homicide and justifiable homicide. See State v. Foster, supra, 355 Mo. 577, 197 S.W.2d 319, 320; State v. Pillow, Mo., 169 S.W.2d 414, 418; State v. Chamineak, Mo., 343 S.W.2d 153, 164 [22].

It is apparent from the above description of the instruction that it is not abstract, as contended by defendant. It hypothesizes the necessary facts to be found by the jury prerequisite to a verdict of guilty. Furthermore, inasmuch as the instruction does not mention passion or provocation, there was no possible reason to "define" those terms as contended by defendant. It is probable that defendant meant by her charge that the instruction failed to "define," that the instruction failed to instruct concerning the matters of passion and provocation, as may be indicated by the further charge that the court failed to instruct "that a battery by Milton Brooks, deceased, at the time of the homicide is sufficient to reduce the charge to manslaughter." In State v. Gore, 292 Mo. 173, 237 S.W. 993, 996, 997, the court held that since the definition of manslaughter enacted by the legislature in 1919 (see present Section 559.070 RSMo 1959 and V.A.M.S.) the elements of "heat of passion" and "reasonable provocation" need not be included in a manslaughter instruction as they are not necessary elements of the crime; and that an instruction defining manslaughter in the words of the statute and excluding first and second degree murder and justifiable and excusable homicide is sufficient. It is apparent that the instruction in the present case in the light of the ruling of the Gore case is not deficient for any of the reasons assigned by defendant.

New trial assignments 19 and 20 attack instruction 5 on self-defense. The first complaint is that the instruction in one place assumed that defendant had in fact stabbed and wounded deceased rather than requiring the jury to find that she had. There is no merit in that contention. The instruction twice specifically required a finding that defendant stabbed and wounded Milton Brooks and, considered as a whole, there reasonably can be no doubt that the jury understood that the instruction so required.

The other attack is that instruction 5 told the jury in part that "although defendant may have really believed herself to be in danger, yet she cannot be acquitted on the grounds of self defense unless it further appears from the evidence that she had reasonable cause for such belief. On the other hand, even if no real danger existed, yet if defendant had reasonable cause to believe and did believe that it existed, she should be justified in acting upon such belief." Defendant objects to the use of the word "should" in the last sentence above quoted instead of the word "would," contending in her motion for new trial that the word "should" gives the jury the right to accept or reject defendant's justification, whereas the word "would" directs that the jury must acquit if it believes defendant was justified in acting in self-defense. An examination of the entire self-defense instruction results in the conclusion that the defendant's contention in the respect noted is unsubstantial. The jury reasonably would have understood the circumstances under which defendant was justified in acting upon a belief that there was danger if she had reasonable cause to believe it existed and would not have been misled by the word "should" in the context noted. The word "ought" is a synonym for "should," and the expression "she should be justified" is tantamount to "she ought to be justified." In a prior part of the instruction the jury was directed (to which defendant made no objection) that if defendant believed and had reasonable cause to

believe that it was necessary to stab deceased to protect herself, then "she ought to be acquitted on the ground of self-defense." We consider the criticism of the instruction to be technical and without substance.

Defendant finally contends in assignment 21 that "the Court erred in failing to give an instruction on threats although there was evidence of threats." The answer to that assignment is that there was no evidence of threats by the deceased toward the defendant and, consequently, for that reason, irrespective of any others, defendant was not entitled to an instruction as to "threats."

We have examined those record matters which we are required to review and find no error in connection with them.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.