**STATE of Missouri, Respondent,**

**v.**

**Johnny NELSON, Jr., Appellant.**

**No. 55010.**

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

John C. Danforth, Atty. Gen., Frank P. Cihlar, Asst. Atty. Gen., Jefferson City, for respondent.

Cyril M. Hendricks, Fowlkes & Hendricks, Caruthersville, for appellant.

WELBORN, Commissioner.

Appeal from seven-year sentence for manslaughter, imposed upon jury verdict finding defendant guilty of that offense under an information charging murder.

At around 3:00 A.M. on July 21, 1968, two policemen cruising the downtown area of Caruthersville, Missouri heard three shots fired. They backed their police car toward where the noise had originated and saw James Leek entering a pickup truck. One of the officers went to the truck and saw that Leek was wounded "because he was bloody all over." A knife was found near the truck. An ambulance was called and Leek died shortly from a stab wound in the center of his chest.

Sometime between midnight and dawn on Sunday, July 21, Johnny Nelson, Jr., appeared at the residence of Walter Lee Dent in Caruthersville. Nelson's shirt had blood on it and he carried a .38 pistol in his hand. He told Dent: "Brother, get up. I think I've killed a white man." He asked Dent for a shirt, which Dent gave him. He also asked Dent to go find his daddy. Dent looked for Nelson's daddy but couldn't find him.

Sometime before daylight on July 21, Nelson went to Miss Shirley Presberry's house in Caruthersville. He gave her a .38 pistol, telling her that he did not want his father to see it. Miss Presberry turned the pistol over to the sheriff of Pemiscot County. It was identified as having been registered or owned by Leek. When the weapon was turned over to the sheriff, there were five shells in it. Three had been fired. Two were live.

At Nelson's trial, the defendant and Ida Mae Dent, a witness for defendant, testified that Leek's truck stopped when Nelson "thumbed" a ride. Nelson thought the driver was someone else. Mrs. Dent didn't want to get in the truck when she

saw that Leek was the driver because she knew that Leek "was frisky with colored women." Nelson told her to go ahead and told Leek they were going to "colored town." Leek told him he'd take them there. Ida Mae sat next to Leek and saw that Leek was carrying a pistol. She also noticed that he had been drinking. Leek put his hand on Ida Mae's leg. She said, "Huh-uh." Leek took his hand off but shortly put it on her leg again and she again said, "Huh-uh." Ida Mae said that he removed his hand and mumbled something she didn't understand. Nelson said that Leek said he wanted to engage in sexual intercourse.

Nelson stated that he was scared because he too noticed that Leek was drinking and also that he was not driving toward colored town. Nelson testified that he took his knife out of his right rear trousers pocket and opened it and placed it along his right hip, without brandishing it.

Leek saw the knife. According to Nelson: "He reached over and he looked over, and he said, 'You goddam nigger, you got a knife. What are you going to do with that goddam knife?' * * * Ida Mae said, 'Who, me?' He said, 'No, I'm not talking to you, I'm talking to that nigger boy.' He stopped the truck and said, 'Both of you all get your damn asses out.' And I got out, and he said, 'I'm going to blow both your goddam brains out.' And I spotted the gun, and I just caught his hand."

Nelson said he caught Leek's hand and pulled it down and the gun fired into the floorboard. Nelson stabbed him and Leek fired another shot as he was getting out of the truck and then a third shot. Leek then dropped the gun. Nelson let go of the knife and picked up the gun and fled. He left town but subsequently returned and was arrested.

At the trial, the jury was instructed on murder in the second degree. A manslaughter instruction was offered by the defendant and given. An instruction on self-defense was given. The jury verdict was guilty of manslaughter, with a seven-year sentence. A motion for new trial was filed and overruled. Appellant originally stated that he did not desire to appeal, but after entering prison he changed his mind and a special order permitting an appeal was made under Supreme Court Rule 28.07, V.A.M.R.

The first contention on this appeal is that appellant was denied adequate assistance of counsel because the trial court reappointed Raymond A. Klemp after he had requested not to serve.

An information charging appellant with murder in the first degree was filed in the Pemiscot County Circuit Court on August 1, 1968. On August 5, 1968, Raymond Klemp was appointed counsel for appellant. A motion to remand the cause to the magistrate court on the grounds of lack of an attorney at the preliminary hearing was sustained. On August 22, a second preliminary hearing was held at which Klemp appeared as attorney for appellant. Appellant was bound over to answer a charge of murder in the first degree and the information was refiled on August 22.

On August 30, Klemp filed a motion to withdraw as attorney on the grounds of threats about defending Nelson, a load of trial work, and because "witnesses * * * are being threatened and browbeaten about their testimony * * * in the magistrate court." On September 3, the motion to withdraw was taken up and sustained. The judge of the Pemiscot County Circuit Court disqualified himself on his own motion at the same time. Judge Billings was transferred to hear the case.

On September 25, 1968, Judge Billings changed the venue to the 35th Judicial Circuit, Dunklin County, and Klemp and James Vickrey were appointed to represent Nelson. On September 26, Klemp directed a letter to Judge Billings, stating:

"I was appointed by the Circuit Court of Pemiscot County to represent the defendant in this matter originally. I con-

ducted the preliminary for him and took considerable time in doing so.

"I was contacted several times from St. Louis due to the fact that the NAACP were so concerned about this case and felt that I did not do the job for him properly. They boasted about having funds available and sending some St. Louis attorney down if we did not do our job properly. Because of this and other reasons, I withdrew from the case. I would like very much to stand on this situation in that I don't want to be associated with the case anymore.

"I also represented the family of the son that was killed, and he feels pretty strongly about this matter. It was somewhat embarrassing to continue in this case, because he is my client. For this and the above stated reasons I wish you would appoint someone else in this case."

On September 30, the court entered an order denying the request of Klemp to be relieved of his appointment.

The trial proceeded with both Klemp and Vickrey present and representing the defendant. The transcript shows no participation by Klemp until the motion for new trial, specifying the charge now under review, was considered.

On this appeal, the contention is that inasmuch as the court deemed the case one that required two counsel for the defendant in order to provide adequate representation, the court should not have required one of such counsel to be a person who, for the reasons Klemp had specified, was unable to provide effective representation.

■ No objection is here raised as to the adequacy of Mr. Vickrey's services on behalf of the appellant. The transcript reveals quite clearly that Mr. Vickrey assumed the laboring oar upon his appointment. Mr. Vickrey ably conducted the trial. He vigorously presented the defendant's cause. The presentation of the motion for new trial shows that Klemp did assist in the handling of evidence that defense counsel wished to present and in various items in which they wished to make a record. Only one attorney at a time could speak on behalf of the defendant. Mr. Vickrey handled that portion of the trial competently. No showing or hint is advanced as to what more could have been done on behalf of the defendant. On this record, there is no showing of lack of effective assistance of counsel and the point is without merit.

The second point here raised deals with the voir dire examination. Three objections are raised. The first relates to the trial court's refusal to permit defense counsel to interrogate each prospective juror individually regarding possible racial prejudice. The second relates to the refusal to permit interrogation of Negro members of the panel as to whether they might be more inclined to convict a member of their own race. The third relates to the refusal to permit voir dire interrogation as to whether prior convictions of the defendant would influence their verdict.

As appellant acknowledges, the conduct of the voir dire examination is largely a subject for the trial court's control in the exercise of its discretion. A clear and obvious abuse of discretion is required to make the trial court's rulings in this area reversible error. State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 693–694 [8, 9].

On the first objection, the trial court made some preliminary inquiries of the panel. Among the questions he asked was whether any member of the panel had prejudice against the Negro race that would prevent his giving a fair trial to a Negro charged with killing a white man. No response was received. Defense counsel was then permitted to ask a similar question of the first six veniremen. The response in each case was that the person questioned could give a defendant in such a case a fair trial. The trial court thereupon told defense counsel that, since the question had been propounded by the court, further inquiry along such line should be limited to a question directed to the panel generally, without repetition as to each

venireman individually. Over objection, defense counsel did so. The basis of the objection is here repeated, namely, that a person having such prejudice would be less likely to acknowledge it as one in a group raising his hand than he would be if questioned individually.

■ The basis of the objection is not demonstrably true. The matter of racial prejudice was inquired into. See State v. Pyle, 343 Mo. 876, 123 S.W.2d 166, 169–170 [8, 9]. The limitation here imposed by the trial court is not shown to have constituted an abuse of discretion.

■ On the second objection, the question proposed was whether or not Negro veniremen might have an inclination to resolve doubt against the defendant "because of any feeling he might have that it would uphold the honor of his race." The question of racial prejudice had been explored both by the judge and by the question propounded to the panel by defense counsel. No abuse of discretion is shown in the refusal to permit such an inquiry as was here proposed. See Ross v. United States, 8th Cir., 374 F.2d 97, 104 [16].

On the third objection, the question to which objection was sustained was as follows:

"Ladies and gentlemen of the jury, if you are selected to serve on this jury, when it comes to determining the guilt or innocence of the defendant for the crime with which he's charged here in Court today, will you reach your verdict of guilty or not guilty on the evidence and all the evidence pertaining to that charge alone, and not be influenced in a verdict by reason of him having been previously convicted for something else?"

We find no abuse of discretion in the court's ruling. The inquiry here propounded opens the door to many problems. See Annotation: "Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case." 99 A.L.R.2d 7, 82–

83, footnote 18. Even if at the time of the inquiry counsel in good faith might expect to have the defendant testify, subsequent occurrences might alter that decision. The prior convictions would in such case be known to the jury, but there would be no basis for the customary instruction defining the effect to be given the prior convictions. Compare State v. Manley, 54 N.J. 259, 255 A.2d 193. Furthermore, the question here propounded ignored the fact that the previous convictions could be considered by the jury in passing upon the credibility of the defendant, so that such convictions could properly influence a juror in his verdict. See People v. Louzon, 338 Mich. 146, 61 N.W.2d 52, 57 [12–14].

■ The trial court's ruling was not an abuse of its discretion in controlling the voir dire.

Appellant's third contention is that "the trial court continually rushed the defense counsel and continually and unduly admonished and scolded the defense counsel in the presence of the jury which caused a prejudicial impression to the jury and caused an undue strain on the defense counsel."

Appellant's brief refers to three incidents in the course of the trial in support of this assignment of error. Two of them, according to the transcript, occurred outside of the hearing of the jury. Those incidents could not have given rise to any prejudice on the jury.

The third incident occurred during the state's interrogation of the police officer who found the victim. The witness was asked what the victim's reply was to the officer's inquiry as to "who done it." Mr. Vickrey interjected: "No objection, Your Honor, I want the record to show we have no objection, although we have a right to.

"THE COURT: Do what?

"MR. VICKREY: I want the record to show we are waiving our right to object to that question. I didn't want the record to indicate we were not properly representing

the boy. The foundation was not laid for dying declarations.

"THE COURT: Mr. Vickrey, we'll not have any more of that. If you have an objection to make, you make it, but I don't want any more statements or speeches. Proceed, Mr. Prosecutor."

Orderly trial procedure does not contemplate the interruption of interrogation of witnesses to explain reasons for not objecting to questions propounded. The trial court was doing no more than exercising his duty to control the proper conduct of the proceedings.

■ The contention that the court's attitude subjected the defense counsel to undue strain is not self-proving. Nothing was offered to substantiate the charge. See State v. Barnholtz, Mo.Sup., 287 S.W.2d 808, 812 [5].

Appellant's next assignment of error is based upon the refusal of the trial court to permit cross-examination of the sheriff as to statements made by the appellant while in custody. Appellant contends that statements to the sheriff would have been consistent with the testimony subsequently given by the defendant and that he should have been permitted to bolster the credibility of such testimony by cross-examination of the sheriff. Appellant contends that the trial court's reliance, in its ruling, on State v. Martin, Mo.Sup., 433 S.W.2d 565, was misplaced because Martin dealt with the necessity of Miranda warnings as a prerequisite to the admissibility of an exculpatory statement.

■ Regardless of the applicability of State v. Martin, supra, the rule is well settled that a defendant in a criminal case may not adduce his own self-serving statements which are not a part of the res gestae. State v. Durham, Mo.Sup., 418 S.W.2d 23, 28 [10]; State v. O'Neal, Mo.Sup., 436 S.W.2d 241, 243–244 [2], [4]. No contention is made that the statement here involved was part of the res gestae. In fact the conversation with the sheriff occurred several days after the stabbing. No error was committed by the trial court in excluding the cross-examination.

The next assignment of error relates to the trial court's interruption of the defendant's demonstration of the position and actions of the parties in the truck at the time of the occurrence.

In the direct examination of the defendant, his counsel arranged chairs in front of the jury box and he and the defendant were seated in them, attempting to demonstrate to the jury the position of the parties in the truck. After ruling on an objection to a leading question, the court inquired: "Are you finished with him with your demonstration?

"MR. VICKREY: I want to ask another question or two, Your Honor, to demonstrate this.

"Q (by Mr. Vickrey) I believe we talked about one shot, tell us about these other two shots.

"A About the second—

"THE COURT: Mr. Witness, you get back up here in the witness stand—

"MR. VICKREY: Your Honor, please the Court, I want him to show where he was.

"THE COURT: Mr. Witness, get back in the witness stand. Now, you ask him the question about the second shot.

"MR VICKREY: I'd like to make a record.

"(The following proceedings were had in the presence but out of the hearing of the jury:)

"MR. VICKREY: I object and except to the action of the Court in making the witness get back in the chair, after he's testified about stabbing one lick and one shot being fired, when I want to demonstrate other things that happened, and I want to get a clear picture to the jury. I think it's prejudicial not to permit us to show the jury

what happened. I don't see where it's causing any prejudice or confusion at all, to permit the witness to set by me in those two chairs in front of the jury box and show how he reached in front and behind or however he reached in relationship to the location of the deceased, and how the deceased reached and what he did in relation to him. The Court would observe, as far as my part of the demonstration, I'm just sitting there. I'm asking him to show what he did and what the deceased did. I think we are being deprived of a fair trial by forcing this witness back on the stand at this time.

"THE COURT: In response to Mr. Vickrey's statements and misstatements, let the record show that he and the defendant have been sitting in chairs in front of the jury box for about five minutes, and that Mr. Vickrey, over objections of the State, has continued to lead the witness constantly, and that the Court will permit Mr. Vickrey to ask the witness any and all questions that he so desires, and then if he wants to get back down in front of the jury box and he and the defendant sit side by side, the Court will permit him to have the witness explain and demonstrate by movements as to what he has testified to. But we do have a witness stand here. The Court cannot see many of these movements, and for that reason the Court has directed the witness to resume the witness stand. So, you may proceed.

"MR. VICKREY: I renew my request.

"THE COURT: Denied.

"MR. VICKREY: For the witness to be permitted to sit back in the chair and continue the demonstration. In view of the denial, I respectfully ask the Court to discharge the jury panel and declare a mistrial.

"THE COURT: The request will be denied."

■ This entire matter is one entrusted to the trial court's sound discretion. 29 Am.Jur.2d, Evidence, § 818, p. 909. No abuse of discretion has been shown. The trial court explained its reason for requesting the defendant to resume the witness stand. Furthermore, the court did not prohibit further demonstration. It merely requested that oral testimony precede the demonstration.

Four assignments of error are related to instructions given or refused by the trial court. The first is to the trial court's refusal of an instruction on the credibility of witnesses offered by the state. Appellant says that the instruction met his approval but was refused by the court on its own motion.

■ The record does not show that the defendant joined in the tender of the rejected instruction. Assuming that he did so and that such procedure is permissible, the instruction on credibility of witnesses has frequently been declared a matter for the sound discretion of the trial court. State v. Wolfskill, Mo.Sup., 421 S.W.2d 193, 197–198 [10]; State v. Lord, Mo.Sup., 286 S.W. 2d 737, 742 [21, 22]. The instruction offered, if given, would necessarily have been directed primarily to the testimony of the defendant and his witness. There was no basic conflict between the testimony of the state's witnesses and that of the defense. Reference to "the interest of the witness, if any, in the result of the trial" and "the witness' relation to or feeling for or against the defendant or the prosecuting witness" would have been particularly inappropriate in this case where the witnesses for the state were all public officers and the defendant alone had a personal interest in the outcome and the friendly relation existed between the defendant and his principal witness. No error was committed in the refusal to give the instruction.

Appellant alleges that the trial court erred in the instruction which it gave on self-defense and in refusing the instruction tendered by the defendant on the subject.

■ The instruction given by the court is taken from that approved in State v. Hostetter, Mo.Sup., 222 S.W. 750, 754.

Appellant says that the instruction is ambiguous, misleading and inconsistent and that its length and ambiguity are enough to confuse the jury. No effort is made to point where ambiguity complained of appears. No inconsistency is demonstrated. Length alone is not reason for holding an instruction erroneous.

Appellant contends that the instruction conveys the impression that the defendant must prove beyond a reasonable doubt that he acted in self-defense. Again, appellant has not attempted to demonstrate what language found in the instruction conveys that impression. The only reference in the instruction to reasonable doubt is: "If you believe from the evidence beyond a reasonable doubt that the defendant did not have reasonable cause for such belief [of impending injury], you cannot acquit him on the ground of self-defense * * *." This imposes no burden upon the defendant. The burden here placed is that upon the state under the general instruction on burden of proof.

There being no error in the instruction given, the court was not obliged to give the instruction tendered by the defendant on the same subject. State v. Wright, Mo. Sup., 336 S.W.2d 714, 718 [3]; State v. Hostetter, 222 S.W. 750, 755 [9].

■ The next objection based on instruction is that giving of a manslaughter instruction was error because there was no evidence to support such submission. The manslaughter instruction was tendered by the defendant. By Supreme Court Rule 26.06, V.A.M.R., "A defendant in any criminal case shall have no just cause for complaint because: (1) error was committed during the trial at his instance * * *."

■ The final attack based upon instruction charges that the instruction on burden of proof was erroneous. The objection states merely that the instruction given did not correctly state the law and was not sufficient to guide the jury correctly. No citation of authority is given. No effort is made to demonstrate the alleged deficiencies. Nothing is presented for our review by this contention. State v. Baber, Mo.Sup., 297 S.W.2d 439, 443 [10].

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and RANDALL, Special Judge, concur.

BARDGETT, J., not sitting.