STATE of Missouri, Respondent,

v.

Mitchell Allen JENSEN, Appellant.

No. 62464.

Supreme Court of Missouri,
Division No. 2.

Sept. 8, 1981.

Rehearing Denied Oct. 13, 1981.

Richard W. Dahms, John D. Boeh, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Appellant, Mitchell Allen Jensen, was found guilty by a jury of the capital murder of Lorna Sue Guess and sentenced to life imprisonment without possibility of probation or parole for fifty years.

On this appeal appellant does not challenge the sufficiency of the evidence to support the conviction. We need only state that a jury reasonably could find that appellant, an employee of Long John Silver's restaurant in St. Joseph, Missouri, went to the restaurant on the morning of January 12, 1980, opened the safe and took some money from it, and while ransacking the place in an attempt to make it appear that a burglary had taken place, he was surprised by the arrival of the manager, Lorna Guess. After an unavailing attempt to persuade her not to call the police, appellant shot and killed her. He then went to his home where he hid the gun under the refrigerator and the money under the mattress on his bed.

Prior to trial appellant filed a Motion to Suppress evidence on which the court conducted a hearing. Appellant was the only witness in support of the motion, and as to some matters there was a substantial variance between his version of what occurred and that of the two police officers who testified. The court overruled the motion, and then expressly found "on the evidence heard" that "the statements made by the defendant were voluntary," that they would be admitted into evidence, and that appellant "voluntarily waived his [constitutional] rights." Subsequently, in ruling on an objection, the court stated that it recalled the testimony of the police officers that leniency was not offered to appellant in an effort to induce a confession and that appellant did not request a lawyer, and it added: "The court believes the officers, does not believe the defendant, [and] that's the basis of the Court's ruling." See *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981).

By his only point presented on this appeal appellant does not directly contend that the trial court erred in overruling his motion to suppress. Instead, he asserts the trial court erred in overruling his objection to the ad-

mission in evidence during trial of his confession, and he assigns as the reasons therefor that "under the totality of the circumstances surrounding the obtaining of these confessions" various constitutional rights were violated, and "the confessions should therefore be deemed involuntary for the reason that the physical and psychological coercion exerted on [him] was of such degree that [his] will was overborne at the time he confessed." He further asserts that he was of a youthful age and without the advice of counsel, parent or friend during protracted interrogation by a "revolving door" of detectives over an extended length of time during which he was "forced to view gruesome photographs of the deceased," was not permitted adequate sleep or rest and was held in a stark and uncomfortable cell in the brief interims between interrogation, all of which contributed to the mental, emotional and physical exhaustion of appellant, thereby making him extraordinarily susceptible to suggestion, duress, and the psychological ploys of the police."

If we treat this point literally; that is, that it presents no challenge to the ruling of the trial court on the Motion to Suppress, then we have the situation where the issue of voluntariness of the confession was submitted to the jury under unchallenged instructions, and that issue was resolved by the jury contrary to appellant's contention. We also have the situation that most of the page references made by appellant in the argument portion of his brief are to testimony of appellant at the pretrial hearing on the Motion to Suppress, and that testimony was not heard by the jury. We believe that under these circumstances we should treat the issue as being a challenge to the ruling of the court in overruling the Motion to Suppress. But, as previously noted, based on the evidence at that hearing the trial court expressly ruled that the confessions were voluntary. In doing so it had before it all the factual matters which appellant now asserts lead to the conclusion that the confession was not voluntary. As stated in *State v. Alewine*, 474 S.W.2d 848, 852 (Mo. 1971), the question on appeal in circum-

stances such as this "is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given."

For the most part the factual matters expressly relied on by appellant in support of his contention are not in dispute; it is only the result to be drawn from those facts. As to a few matters there is a factual dispute. For example, in his testimony at the hearing on the motion to suppress appellant stated that on several occasions he requested an attorney, and also that the police officers told him that if he would cooperate they would talk to the prosecutor and attempt to have the charges against him reduced. However, failure to provide an attorney or stop the interrogation, and promises of leniency are not specifically set forth in appellant's point as constituting grounds for rejecting his confession. If appellant's testimony as to these matters is to be considered it is only on the basis that they are a part of the "totality of the circumstances," and the police officers emphatically denied their occurrence. As previously noted the trial court, who had to judge the credibility of the witnesses, expressly held that as to these matters it "believes the officers" and "does not believe" appellant.

█ Where there is conflicting evidence on the issue of the voluntariness of a confession, as there is in this case, the admissibility of the confession is a matter of discretion on the part of the trial court which should not be lightly disturbed. *State v. Royal*, supra; *State v. Flowers*, 592 S.W.2d 167 (Mo. banc 1979). This is equally true when, as in this case, there is a conflict between what the appellant and the State contend should be the conclusion to be reached from the facts and circumstances. In this case the "totality of the circumstances surrounding the obtaining of these confessions" does not compel the conclusion that the statements constituting a confession were involuntary. We shall briefly set forth the circumstances which demonstrates that the conclusion of the trial court that the statements were voluntary is supported by the evidence.

On January 12, pursuant to a request by the police, appellant voluntarily went to the police headquarters. Other employees of Long John Silver's were there. He was asked routine questions pertaining to the names of employees who had a key to the restaurant and who knew the combination of the safe. He was there only a short time, but it was at this time that he was shown "a picture" of Lorna Guess taken after the shooting and was asked if he recognized the person there shown. The picture is not before us, but the police officer admitted it "wasn't a pleasant picture," which would be true as to any picture of the victim of a murder. There is nothing in the record to the effect that appellant was "forced to view gruesome photographs of the deceased."

Appellant returned voluntarily to the police headquarters the following day to take a polygraph test and he then returned home. Three days later he was asked to return again to police headquarters which he did voluntarily. He was not placed under arrest, but when he arrived he had read to him his "*Miranda*" rights, and he then signed a waiver of those rights. He makes no contention that he did not then understand his rights or that the waiver was not voluntarily signed by him. Appellant then gave a verbal statement in which he said that he had not been at Long John Silver's restaurant on the morning of the murder. Appellant testified at the hearing that the officers then told him that his statement was a lie because his automobile was seen nearby and someone fitting his description was seen going toward the restaurant. Faced with this appellant then admitted that he had gone to the restaurant "to finish up some work." He testified that at that time he had not asked for an attorney, and had not asked that questioning cease. He admitted that the officers "instructed [him that he] would be permitted to leave at any time." The officers asked his permission to search his automobile and his house, and he agreed if he could be present. He executed a written consent to make both searches, and we find no contention that these consents were not understandingly and voluntarily executed. After his automobile was searched there was an interval of about 45 minutes to an hour while appellant sat in a chair and the officers discussed the case among themselves. When they asked him to make another statement, according to appellant, he requested an attorney, and an officer tossed him a telephone book and said, "well, go ahead and call one." It was at this time, according to appellant, that he asked "what the penalty was, for what the crime was." and he was told that if he cooperated he would be "out within two years." All of this was expressly denied by the police officers who were involved. That evening appellant's house was searched, and "the weapon they were looking for" was found concealed under his refrigerator. When this occurred appellant broke down and cried. It was at this time that appellant was first placed under arrest, and he was again read his "*Miranda*" rights.

When they returned to police headquarters the officers again, as appellant testified, "read me my rights, asked me if I wanted an attorney." When they asked if he wanted to make a statement he said he was sleepy, and he was placed in a cell and permitted to sleep. Appellant stated he slept 45 minutes, but the officers stated it was almost four hours, and when he was awakened he was given coffee and some food. It was following this that appellant gave a statement in question and answer form which was reduced to writing by one of the police officers and consisted of 13 pages which appellant signed. Immediately before making the statement appellant again had read to him from a "*Miranda*" card his rights, and he signed a statement of Waiver of Rights as follows:

"I have read this statement of my rights and I understand what my rights are. Keeping these rights in mind, I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

The statement was signed by appellant at 10:10 o'clock in the morning of January 17, 1980.

About one o'clock that afternoon one of the officers awakened appellant in his cell and told him that the information had been turned over to the prosecuting attorney. Appellant then started crying and stated that he wanted to tell "all of it; this time tell * * * the truth." According to the officer he made no promise of leniency, and appellant did not request an attorney. Appellant was again advised of his rights and he again signed a Waiver of Rights in the form above set out. A statement was reduced to writing and it was signed by appellant. The principal difference between the two statements is that in the second appellant did not purport to implicate any of the other employees of the restaurant.

The conclusion of the trial court that the confession of appellant was voluntarily made is clearly supported by the evidence, and justifies the conclusion of voluntariness based on the "totality of the circumstances."

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

WELLIVER, P. J., and HIGGINS and SEILER, JJ., concur.