STATE of Missouri, Respondent,

v.

Terry Lee McILVOY, Appellant.

No. 62026.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Rehearing Denied April 6, 1982.

Charles B. Blackmar, Thomas P. Howe, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant was convicted of capital murder, § 565.001, RSMo 1978,[1] and sentenced to death pursuant to § 565.008.1. Jurisdiction for original appeal to this Court is by virtue of Mo.Const. art. V, § 3. In addition to our review for error, the Court will review the death sentence as mandated by § 565.014. We affirm appellant's convic-

---

1. Unless otherwise indicated, all statutory references are to RSMo 1978.

   All references to pattern instructions and court rules are to those in effect on October 15, 1979, the date when trial began, unless otherwise indicated.

tion for capital murder and remand the case for resentencing consistent with this opinion.

In a separate case, Vicky Williams was tried for the same crime, found guilty of capital murder, and was sentenced by the jury to life imprisonment without eligibility for probation or parole for fifty years. *See State v. Williams*, 611 S.W.2d 26 (Mo. banc 1981). Since the cases involve the same crime, the factual statement of the *Vicky Williams* case will be adopted to the extent permissible.

At least as early as November of 1978, ... [Vicky Williams] began soliciting various young men to assist her in killing [her husband] Gilbert. Prior to February 1979, two different plans to that end were developed, but neither was implemented for lack of such assistance or for lack of opportunity. Finally, on the evening of February 2, 1979, ... [Vicky Williams] successfully recruited five men, Michael Shane, David Yoebstl, Robert Abel, Ronald Nunnery and Terry McIlvoy, to travel to the Spirit of St. Louis Airport, where Gilbert worked as a security guard, to kill him. All but Yoebstl went in search of Gilbert, but could not get close enough to his truck to complete the task. On the evening of Saturday, February 3, 1979, ... [Vicky Williams] hosted a party while Gilbert was at work at the airport. There was testimony that she told some of the men that the job had to be done that night.

Early Sunday morning, February 4, the same five men again went to the airport. Shane and McIlvoy walked to a point on the airport grounds where appellant told them Gilbert stopped on his rounds to punch a watchmen's clock. Shane carried a hickory club and McIlvoy was armed with a .22 calibre rifle. When Gilbert stopped his truck, McIlvoy fired several rounds into the driver's side window. Shane used the club to smash out the remainder of the window and McIlvoy shot a few more times through the opening. A post mortem examination of Gil-

bert's body revealed that he was hit with five .22 caliber bullets.

611 S.W.2d at 28–29.

Other facts not set forth in the *Williams* case but relevant to the issues in this case follow.

A forensic pathologist testified that Gilbert Williams probably bled to death in five minutes as a result of the five .22 caliber bullet wounds, any one of which could have been fatal.

The two unconsummated murder plans mentioned in *Williams* contemplated that Shane, a participant in the actual killing, agreed to do the killing for $4,000 and certain drug connections at his Army base which would permit him to sell drugs on the base. On February 2, 1979, two or three days after Nunnery had introduced appellant to Vicky Williams, appellant attended a party at Vicky's house, where large quantities of alcohol were consumed by those in attendance. After a conversation between Vicky and appellant, Vicky announced that appellant would do the killing for $1,000 and that while Shane would get no money, he would still get the drug connections he had requested. The only evidence of Vicky's ability to pay the $1,000 was her displaying a piece of paper and stating that she had a substantial income tax refund coming.

On the night of the killing, appellant had consumed a large quantity of alcohol at Vicky's house before departing with the other four men to go kill Gilbert Williams. There was testimony that appellant is a chronic alcoholic and a person of subnormal intelligence (an I.Q. of 81) and that large amounts of alcohol or drugs would further impair his already subnormal intellect. After the killing, the men returned to the Williams' house in order to drop off Abel, at which time appellant told Abel to tell Vicky that "she owed him a fuck" for what he had done.

Appellant and Nunnery went on to appellant's house where they slept the balance of the night. When appellant awoke, he said that he did not believe the act had happened until he saw Nunnery asleep on his

couch. He told Nunnery that he did not know why he had done it. Later that day, appellant told his wife about the killing and they packed and fled. Three days later, appellant telephoned the St. Louis County Police Department from Dallas, Texas, in order to tell them that he was willing to surrender. A St. Louis County police officer went to Dallas, where appellant confessed and told him about the parties, the drinking, and the killing substantially as it was described in *Williams.*

At trial, appellant testified that when Vicky Williams asked him if he would get rid of her husband, he thought it was some kind of joke. He claimed that he went along with the joke so that he could eventually turn it against the perceived pranksters.

We will address first those assignments of error wherein appellant challenges his conviction for capital murder.

**I**

Appellant contends that the trial court erred in submitting Instruction No. 5, which is a combination of MAI–CR2d 15.02 and MAI–CR2d 2.12. He challenges this instruction on five different grounds, each of which will be addressed in turn. Instruction No. 5 states:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 4, 1979, in the County of St. Louis, State of Missouri, the defendant, with the aid or attempted aid of Michael Shane, committed the offense of capital murder, in that the defendant caused the death of Gilbert Williams by shooting him, and
>
> That the defendant intended to take the life of Gilbert Williams, and
>
> That the defendant knew that he was practically certain to cause the death of Gilbert Williams, and
>
> That the defendant considered taking the life of Gilbert Williams and

reflected upon this matter coolly and fully before doing so, and

> That the defendant was not relieved of criminal responsibility for the death of Gilbert Williams because of an intoxicated or drugged condition as submitted in Instruction No. 13, or diminished mental capacity as submitted in Instruction No. 14,
>
> Second, that the defendant, either before or during the commission of the offense of capital murder, with the purpose of promoting its commission, aided or attempted to aid such other person in committing that offense

then you will find the defendant guilty of capital murder, unless you find and believe from the greater weight of evidence that the defendant is not guilty by reason of mental disease or defect excluding responsibility as submitted in Instruction No. 10.

> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

**A**

■ Appellant's first challenge to the instruction is the contention that it does not conform to the applicable MAI–CR2d pattern instructions in that it is a blend of both MAI–CR2d 15.02 and MAI–CR2d 2.12.[2] Thus, he contends that the trial court breached the directive of Rule 20.02(c) (now Rule 28.02(c) (1982)), which mandates that MAI–CR instructions be given to the exclusion of any other on the same subject whenever there is an applicable MAI–CR pattern instruction.

■ Note 3 of MAI–CR2d 2.10 requires that MAI–CR2d 2.12 be given whether requested or not, whenever there is any evidence that the defendant acted with others in planning, committing, or attempting to commit an offense. Note 2 under MAI–

---

**2.** Appellant does not argue that MAI–CR2d 2.12 should not have been given at all. Submission of MAI–CR2d 2.12 was compulsory because there was evidence that appellant acted with others as an active participant in the offense charged. *See* MAI–CR2d 2.10, Note 3.

CR2d 2.04 requires that verdict directors contain all essential elements of the offense charged. MAI–CR2d 2.12, on the other hand, requires that the offense initially contemplated (here, the murder of Gilbert Williams) be identified briefly without stating all of the elements of that offense. Note 5 of MAI–CR2d 2.12 directs the trial court to give a separate instruction defining the offense initially contemplated whenever MAI–CR2d 2.12 is used. Faced with these directions, the trial court did not err by incorporating MAI–CR2d 15.02, which enumerates all of the essential elements of capital murder, into MAI–CR2d 2.12. *See State v. Baker*, 630 S.W.2d 111 (Mo.App. 1981); *State v. Simpson*, 614 S.W.2d 31, 33 (Mo.App.1981); *State v. Brown*, 607 S.W.2d 881, 886–88 (Mo.App.1980); *State v. Clark*, 607 S.W.2d 817, 820–21 (Mo.App.1980); Rule 28.02(d) (1982). This Court has approved similar combinations of these two instructions in *State v. Mitchell*, 611 S.W.2d 223, 226, n.2 (Mo. banc 1981) and *State v. Williams*, 611 S.W.2d at 29–30, n.3. We approve of the combination as used here.

### B

■ In appellant's second challenge to Instruction No. 5, he claims that the instruction was erroneous because in using the words "in that" in the first subparagraph of the first paragraph, it "literally told the jury ... that the ... [appellant] intentionally, knowingly and deliberately killed the victim...." We reject this challenge because we do not believe that the use of the words "in that" caused the jury to assume as true the elements of capital murder set forth immediately after those words. The jury was advised in Instruction No. 3 (MAI–CR2d 2.03) that "The Court does not mean to assume as true any fact referred to in these instructions but leaves it to you to determine what the facts are." Instruction No. 1 (MAI–CR2d 2.01) made it clear that it was the jury's duty alone to determine the facts, and Instruction No. 4 (MAI–CR2d 2.20) cautioned that the appellant was presumed to have been innocent unless and until the jury found him guilty beyond a reasonable doubt. Moreover, Instruction No. 5 itself, in its first clause, directed the jury that *they* were to determine the truth or falsity of the hypothetical facts described in that instruction. We conclude that the jury was not misled by the use of the words "in that" in Instruction No. 5.

### C

In appellant's third challenge to Instruction No. 5, he claims that it erroneously declared the law in referring to Instruction No. 13 (MAI–CR2d 3.30.1) on voluntary intoxication and Instruction No. 14 (MAI–CR2d 3.74) on diminished mental capacity by describing them as conditions that would relieve appellant of *all* criminal responsibility for the death of Gilbert Williams, whereas Instruction Nos. 13 and 14 confined this defense to the charge of capital murder. The effect of this, he argues, was to confuse the jury and to make them believe that an outright acquittal would follow if they found that appellant was voluntarily intoxicated or drugged or had a diminished mental capacity.

■ The subparagraph about which appellant complains stated that the jury must find beyond a reasonable doubt, "That the defendant was not relieved of criminal responsibility for the death of Gilbert Williams because of an intoxicated or drugged condition as submitted in Instruction No. 13, or diminished mental capacity as submitted in Instruction No. 14." Instructions No. 13 (MAI–CR2d 3.30.1) and No. 14 (MAI–CR2d 3.74) each clearly stated that if the conditions described in those respective instructions were found to exist, the jury was compelled to find appellant not guilty of the offense submitted in Instruction No. 5: capital murder. Neither Instruction No. 13 nor No. 14 referred to the charge of second degree murder in any way. We conclude that the jury was not confused or misled as appellant contends. Instruction No. 5 does make these defenses available to appellant on the charge of capital murder. Instruction Nos. 13 and No. 14 are ad-

dressed in Point V below. Appellant's third challenge to Instruction No. 5 is without merit.

## D

In appellant's fourth challenge to Instruction No. 5, he claims that it was erroneous because it included a general converse, whereas the Notes on Use under MAI–CR2d 2.04, MAI–CR2d 2.12, MAI–CR2d 2.30, and MAI–CR2d 15.02 direct that when the affirmative defense of mental disease or defect excluding responsibility is submitted, a general converse should not be included in the verdict directing instructions. He argues that he was prejudiced because submitting the general converse shifted the burden of proof on the affirmative defense.

We believe that appellant was not prejudiced by this erroneous inclusion of the general converse within Instruction No. 5. The instruction on the affirmative defense of mental disease or defect excluding responsibility, Instruction No. 10 (MAI–CR2d 2.33), directed the jury that the burden of proof on the affirmative defense was "by the greater weight of the credible evidence". The clause in No. 5 which referred to the affirmative defense instructed the jury that the burden of proof on the affirmative defense was by "the greater weight of evidence". In light of these two sets of instructions, we do not believe that the inclusion of the general converse within Instruction No. 5 misled the jury with regard to the burden of proof on the affirmative defense. We reject this challenge to Instruction No. 5.

## E

In appellant's fifth challenge to Instruction No. 5, he asserts that it is erroneous because it instructed the jury that if they found beyond a reasonable doubt that every element of capital murder was present in this case, they *had* to find appellant guilty of capital murder. He argues that the jury should have been told they "may" find him guilty rather than "will" find him guilty. He relies on Note 3 of MAI–CR2d 2.12, which says, "The word 'may' must be used . . . in any case where § 562.051 [3] is applicable."

As discussed above, Instruction No. 5 was a blend of MAI–CR2d 15.02 and MAI–CR2d 2.12. Since it was not a pure MAI–CR2d 2.12, the Notes on Use of MAI–CR2d 2.12 are not necessarily applicable. Appellant was charged with and found guilty of capital murder based entirely upon his own conduct.[4] Instruction No. 5 set forth the elements of capital murder, including the requisite mental state, and required that the jury find them to be present in connection with appellant before they could find him guilty of capital murder. The instruction stated that if the jury found all of those elements present with regard to appellant, they should find him guilty of capital murder (unless the affirmative defense or one of the special negative defenses came into play). Under such circumstances, it was logical to use the word "will" in the instruction instead of the word "may". *See* MAI–CR2d 15.02 (wherein the word "will" is used exclusively). This challenge to Instruction No. 5 is without merit.

## II

Appellant contends that the trial court erred in submitting Instruction No. 6 (MAI–CR2d 2.12 modified by MAI–CR2d 15.14), the verdict director on second degree murder. This contention must fail, how-

---

3. Section 562.051 provides: "Except as otherwise provided, when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating or mitigating fact or circumstance."

4. This differentiates this case from *State v. White*, 622 S.W.2d 939, 943–44 (Mo. banc 1981), in which the defendant was charged with and found guilty of capital murder based in part upon the conduct of another person. There we held that the use of the word "will" rather than "may" in an instruction which was a combination of MAI–CR2d 15.02 and MAI–CR2d 2.12 was erroneous, although not prejudicially so under the facts of the case.

ever, because there can be no reversible error in the giving of an instruction on a lesser grade of an offense when the jury has found the defendant guilty of a higher grade of that offense, unless an error exists in the former instruction which prevents the jury from convicting on the lesser grade. *State v. Oliver*, 572 S.W.2d 440, 446 (Mo. banc 1978); *State v. Jackson*, 594 S.W.2d 623, 625 (Mo.1980); *State v. Clark*, 412 S.W.2d 493, 496 (Mo.1967); *State v. Brooks*, 360 S.W.2d 622, 628 (Mo.1962). No such error is present in the instant case. Thus, if any error existed in Instruction No. 6, it was harmless. *See* Rule 29.12(a) (1982). Appellant's point is without merit.

### III

#### A

■ Appellant contends that the trial court erred in failing to submit an instruction on conventional manslaughter (MAI–CR2d 15.18) as required by Note 2 of MAI–CR2d 15.18, and by Note 3(d) and Caveat c. of MAI–CR2d 15.00. Since appellant did not raise this point in his motion for new trial in accordance with the provisions of Rule 27.20(a)[5] (in effect then, but repealed effective 1/1/80), our review is limited to determination of whether this omission constituted a plain error. *See* Rule 29.12(b) (1982).

■ The trial court instructed on the offense of capital murder, § 565.001, the offense of second degree murder, § 565.-004,[6] and the offense of manslaughter by culpable negligence, § 565.005. The jury was given the option of exercising leniency and convicting appellant of charges of lesser degree than capital murder. That it

declined to do so makes it illogical to believe that it would have made any difference in the verdict had a conventional manslaughter instruction been given. The instruction which was given on manslaughter by culpable negligence was of a lesser grade and more favorable to appellant than an instruction on conventional manslaughter would have been. Appellant has no grounds to complain about the submission of the instruction on manslaughter by culpable negligence (more favorable to appellant) in lieu of an instruction on conventional manslaughter (less favorable to appellant). *See State v. Tolias*, 326 S.W.2d 329, 335 (Mo.1959); § 545.030.1(16). We conclude that the failure to give MAI–CR2d 15.18 was not plain error. *State v. Smith*, 598 S.W.2d 118, 120–21 (Mo.1980).

#### B

■ Appellant also contends that various alleged defects in Instruction No. 7 made the submission of that instruction error. Appellant, having drafted that instruction and, having requested that it be submitted to the jury, has no just cause for complaint. *State v. Euell*, 583 S.W.2d 173, 178 (Mo. banc 1979); *State v. Nelson*, 459 S.W.2d 327, 334 (Mo.1970); § 545.030.1(16).

### IV

■ Appellant asserts that the trial court erred in using the word "degrees" rather than the phrase "greater and lesser offenses" in Instruction No. 9 (MAI–CR2d 2.14). Use of the word "degrees" was permissible here. Note 3 of MAI–CR2d 2.14; § 556.046.

---

**5.** Rule 27.20(a) required the specific grounds for a new trial to be set forth in detail and with particularity, in separate numbered paragraphs. The only statement appellant made about MAI–CR2d 15.18 being mandatory in this case was in connection with his argument that MAI–CR2d 15.20, the verdict director for manslaughter by culpable negligence, made improper reference to Instruction Nos. 13 and 14 and lacked an introductory phrase.

**6.** This distinguishes this case from *State v. King*, 577 S.W.2d 621 (Mo. banc 1979), cited by

appellant, in which only first degree murder was instructed upon. Instructions were not given there either for second degree murder or for manslaughter.

The submission of a verdict director on second degree murder also provided the "third option of convicting on a lesser included offense" which is required as a matter of due process in capital murder cases. *Beck v. Alabama*, 447 U.S. 625, 642, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980).

## V

Appellant contends that the trial court erred in giving Instruction No. 13 (MAI–CR2d 3.30.1), for the reason that it confined the defense stated therein—intoxicated or drugged condition negating purpose or knowledge—to the capital murder charge and did not make the defense applicable to the instruction on second degree murder. He finds similar fault with Instruction No. 14 (MAI–CR2d 3.74), which sets forth the special negative defense of diminished mental capacity.

Appellant's complaint is unjustified inasmuch as he drafted Instruction No. 14 and requested that it be submitted to the jury. *State v. Euell*, 583 S.W.2d 173, 178 (Mo. banc 1979); *State v. Nelson*, 459 S.W.2d 327, 334 (Mo.1970); § 545.030.1(16). Furthermore, the alleged error in Instructions No. 13 and No. 14 relates only to the verdict director for second degree murder. Appellant was convicted of capital murder and has no ground to complain. Under the holdings of *Oliver, Jackson, Clark*, and *Brooks*, there can be no reversible error in the giving of an instruction on a lesser grade of an offense when the jury has found the defendant guilty of a higher grade of that offense, unless an error exists in the former instruction which prevents the jury from convicting on the lesser grade.

## VI

Finally, appellant argues that the trial court committed plain error "in not granting a new trial, in that its failure to correct the prosecution's argument disparaging the 'diminished capacity' defense under § 562.-076.1(1), RSMo 1978, effectively invited the jury to disregard the instructions of the court given pursuant to the statute."

During the guilt determination phase of the proceedings, the prosecutor made the following comments:

[MR. ANKNEY:] Was there anything said in this courtroom that would mitigate this offense, that would relieve this man of his responsibility for murder? Can you excuse his conduct for anything that was said in this courtroom? I think not. Fifty percent of the murders in the country are committed by people who are intoxicated. His own witness said that. Isn't that frightening? Missouri just passed the law that allowed the diminished capacity and the alcohol defense. It's new in January of '79. *I imagine the floodgates are going to open to use it.*

MR. HOWE: I will object to that. That is disparaging a legal defense. I ask that the Jury be instructed to disregard it.

THE COURT: The jury will be guided by the instructions of the Court, which they will take with them to the jury room and the evidence that they heard from the witnesses, together with the other items introduced into evidence.

(Emphasis added.)

While appellant is technically correct in stating that his objection was "not expressly ruled" upon, it is evident that the trial court's instruction that the "Jury will be guided by the instructions of the Court" was made in response to appellant's request that the jury be instructed to disregard the prosecutor's remark. Appellant did not ask for a mistrial. He was granted all of the relief which he requested. Nothing is preserved for review. *State v. Jackson*, 511 S.W.2d 771, 775 (Mo.1974); *State v. Dunn*, 615 S.W.2d 543, 548 (Mo. App.1981); *State v. Sanders*, 577 S.W.2d 186, 187 (Mo.App.1979). Appellant would still ask this Court to find plain error because the trial court did not of its own motion declare a mistrial. We hold that the trial court did not commit plain error by not declaring a mistrial sua sponte. *See State v. Davis*, 566 S.W.2d 437, 447 (Mo. banc 1978) (errors in closing argument ordinarily do not justify relief as plain error, unless they had a decisive effect on the jury); *State v. Phelps*, 478 S.W.2d 304, 308 (Mo. 1972) (declaration of a mistrial is a drastic remedy to be exercised only in extraordinary circumstances).

VII

We now turn our consideration of appellant's challenge to the jury's imposition of the death penalty.[7]

Section 565.014.1, requires this Court to review a sentence of death when imposed. Section 565.014.3, provides:

With regard to the sentence, the supreme court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 565.012; and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

▇▇ Since enactment of our current capital murder statute, § 565.001 in 1977, see H.B. 90, Laws of Mo.1977, p. 718–22, this Court has considered and affirmed only two death sentences: *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982); *State v. Mercer,* 618 S.W.2d 1 (Mo. banc 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 432, 70 L. Ed.2d 240 (1981). As we did in *Newlon* and *Mercer,* we have compared the records of all capital cases in which sentence was imposed after the effective date of our law, May 26, 1977. *See* § 565.014.5. Those cases in which both the death sentence and life imprisonment were submitted to the jury and which have been affirmed on appeal are: *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982); *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981); *State v. Mercer,* 618 S.W.2d 1 (Mo. banc 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981);

*State v. Mitchell,* 611 S.W.2d 223 (Mo. banc 1981); *State v. Williams,* 611 S.W.2d 26 (Mo. banc 1981); *State v. Royal,* 610 S.W.2d 946 (Mo. banc 1981); *State v. Borden,* 605 S.W.2d 88 (Mo. banc 1980); *State v. Greathouse,* 627 S.W.2d 592 (Mo.1982); *State v. Bostic,* 625 S.W.2d 128 (Mo.1981); *State v. Thomas,* 625 S.W.2d 115 (Mo.1981); *State v. Emerson,* 623 S.W.2d 252 (Mo.1981); *State v. Jensen,* 621 S.W.2d 263 (Mo.1981); *State v. Baskerville,* 616 S.W.2d 839 (Mo.1981); *State v. Downs,* 593 S.W.2d 535 (Mo.1981).

The record before us contains no substantial evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. The record contains some evidence to support the charged aggravating circumstances, § 565.012.2(4), (7).[8] Our comparison to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases is based upon a comparison of all of the above cited cases and the entire record of this case. In making our comparison, we are further mandated by the statute to consider both the "crime" and "the defendant". The "crime" is the same crime charged in *Williams,* wherein Vicky Williams was sentenced to life imprisonment without eligibility for probation or parole for fifty years. The "defendant" in this case appears to be a person with only minimal juvenile criminal record, limited education (9th grade) and limited intelligence (81 IQ), substantial alcohol problems, and a person who appears to be but a weakling and follower in executing the murder scheme perpetrated by Vicky Williams. The promptness with which he telephoned St. Louis police from Dallas, Texas, and voluntarily turned himself in and patiently waited for the St. Louis police to come to Dallas

**7.** Appellant's brief contains thirteen points. Those points he numbered VII, VIII, IX, X, and XIII are rendered moot by the reduction of sentence.

**8.** The aggravating circumstances found present here were: "(4) the offender committed the offense of capital murder for himself or another, for the purpose of receiving money or any

other thing of monetary value;" and "(7) the offense was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, or depravity of mind." § 565.012.2. Reenacted in 1980 by C.C.S.H.C.S.H.B. 1138, 1279, 1461, 1534, 1537, 1592, and 1634, codified at § 565.-012.2, RSMo Supp.1981.

to pick him up, all tend to support our evaluation of defendant as a weakling and a follower. Considering both the "crime" and the "defendant", we hold this sentence of death to be excessive and disproportionate to the penalty imposed in the similar cases now available for our comparison.

The death sentence is set aside and the case remanded for resentencing. § 565.-014.5(2). In all other respects the trial court is affirmed.

DONNELLY, C. J., and SEILER and BARDGETT, JJ., concur.

HIGGINS, J., concurs in part and dissents in part in separate opinion filed.

RENDLEN and MORGAN, JJ., concur in part and dissent in part as per separate opinion of HIGGINS, J.

HIGGINS, Judge, concurring in part and dissenting in part.

I concur in the affirmance of the conviction for capital murder; I dissent from the majority's decision to relieve the defendant of the death penalty as recommended by the jury and imposed by the court.

I agree with the majority's review of the death sentence insofar as it determines that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and that the evidence supports the jury's finding of statutory aggravating circumstances. Section 565.014.-3(1)(2), RSMo 1978.

I cannot agree with the majority's determination that the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Section 565.014.3(3), RSMo 1978. The determination in this case is premised on an assertion that defendant's crime is the "same crime" charged against Vicky Williams for which a jury recommended that she be punished by imprisonment for life without eligibility for probation or parole for fifty years, thereby to imply that McIlvoy is insulated from the death penalty.

It is true that both Vicky Williams and Terry Lee McIlvoy were charged with the same capital murder, that of Vicky's husband, Gilbert. Nevertheless, her guilt resulted from a submission that she was an "aider" who procured Terry Lee McIlvoy and others to kill her husband. *State v. Williams*, 611 S.W.2d 26, 29 (Mo. banc 1981). A difference, if any be required, sufficient to support affirmance of the death penalty in this case is that McIlvoy's guilt resulted from a submission that he, himself, although aided by others, committed the murder of Gilbert Williams by shooting him a number of times in the manner described, and that he did so by intention and after cool and full reflection. Although the acts of McIlvoy at the site of the killing were attributed to Williams for purposes of determining her guilt, they were not her acts; she was not present at the scene of the murder. *Cf. State v. Newlon*, 627 S.W.2d 606 (Mo. banc 1982). (Where defendant was present.) The "crimes" committed by Williams and McIlvoy are not the same when considering whether the penalty imposed is excessive or disproportionate.

Those matters enumerated to picture defendant as a "weakling and a follower" were in evidence at trial and were embodied in the submission of the guilt and punishment issues to the jury. The majority's recital of these "factors" in considering whether the death penalty is excessive or disproportionate for this defendant is not persuasive once it decided that he is not relieved of his culpability by reason of diminished capacity. They are not overriding factors to require this Court to view defendant's sentence as excessive and disproportionate and to relieve him of his sentence.

The judgment, including conviction of capital murder and sentence to death therefor, should be affirmed.